UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| HEADSTART NURSERY, INC., and T AND C SUPPLIES, INC., <br><br> Plaintiffs, <br><br> v. <br><br> JACK PALMERI, and MOTHER EARTH ORGANIC FARMS, LLC, <br><br> Defendants. | Case No.18-cv-03285-NC <br><br> **ORDER DENYING DEFENDANTS' MOTION TO DISMISS FOR LACK OF PERSONAL JURISDICTION AND DENYING DEFENDANTS' MOTION TO CHANGE VENUE** |

This case arises out of an unpaid debt for watermelon seedlings grown by Plaintiffs and shipped to Defendants' farm. *See* Dkt. No. 1. Plaintiffs Headstart and T and C Supplies (dba and hereinafter "Radicle Seed Company") of Gilroy, California, are suppliers of transplants for use in commercial agriculture. *Id*. at 4. Defendants Palmeri and his company Mother Earth Organic Farms (hereinafter "MEO") own a 500-acre farm in Nevada. *Id*. at 5. Palmeri is a resident of Florida and MEO is incorporated in Florida. *Id*. Headstart claims that it grew, sold, and shipped 500,000 watermelon transplants, valued at $203,049.55, to the MEO farm in Nevada.[1] *Id*. at 4. No payment was tendered for the transplants. *Id*. Interest of $92,254.65 had accrued on that debt as of March 31, 2018. *Id*. Plaintiffs seek to enforce this debt by bringing five claims: restitution/unjust

---

[1] Throughout their papers, the parties referred to this land as "Black Stone Farm," "Black Rock Farm," and "Mother Earth Organic Farm." This Order will refer to the land as the "MEO Farm."
Case No.18-cv-03285-NC

enrichment and conversion against both defendants; breach of contract against MEO; and promissory fraud and alter ego/veil piercing against Palmeri.

Palmeri and MEO moved to dismiss the complaint for lack of personal jurisdiction or, in the alternative, to transfer the case to a different venue (the District of Nevada). Dkt. No. 17. This Court finds that it has personal jurisdiction over both defendants and that venue in the Northern District of California is proper, and therefore DENIES both motions.

## I. BACKGROUND

### A. Factual Allegations

Jack Palmeri and his associate Tom Gonzales formed Mother Earth Organic Farms in Florida to farm 500 acres of land in Gerlach, Nevada.[2] *See* Dkt. No. 17 at 22, Palmeri Dec. at ¶ 3. In October 2015, Gonzales and Palmeri met with Doug Langum, a farming consultant from California. *See* Dkt. No. 30 at 2, Langum Dec. at ¶ 5. Langum's company is called Forty-Four Organic Farms. *Id*. Palmeri told Langum that he was interested in growing melons at the MEO farm. *Id*. He asked Langum to prepare an operating budget and farming plan to grow melons. *Id*. Langum provided a projected budget for the farm in early November 2015. *Id*.

In December 2015, Langum wrote a "Statement of Work" to describe the work that he would do for MEO. *Id*. at ¶ 11. This statement was never signed by any party but Langum alleges that Palmeri agreed to its terms. *Id*. It stated that Forty-Four would provide "all of the necessary management to produce 7 million pounds of seedless watermelons" at the MEO farm in the 2016 season. *Id.* at ¶ 11. MEO agreed to pay Forty-Four Farms $25,000 per month to manage the Nevada farm. *Id*. at ¶ 12. Palmeri gave Langum the title of "Director of Agriculture" of MEO, as well as MEO business cards and an MEO email address with that title. *Id*. at ¶ 9. Langum hired an employee to live and work full-time at the MEO farm in Nevada and traveled there himself every week. *Id*. at ¶

---

[2] The manager and member of MEO is Blackstone Realty Investors, LLC, a Nevada company of which Palmeri was the manager. *Id*. Palmeri's business ventures related to the Nevada farm seem to have taken multiple names at different times, including "Palmeri Produce." *See* Dkt. No. 31, Nelson Decl. Ex. 6.

Case No. 18-cv-03285-NC    2

1    12. Langum also began acquiring the supplies necessary to begin the melon operation at
2    the MEO farm. *Id*.

3    In January 2016, Langum contacted Dale Nelson from Robinson Fresh, a produce
4    distributor in California with whom Langum had worked in the past. *See* Dkt. No. 31 at 2,
5    Nelson Decl. at ¶ 3. Langum told Nelson that he was the Director of Agriculture of MEO,
6    which would be growing watermelons at the MEO farm in Nevada with transplants
7    provided by Headstart Nursery. *Id*. Langum expressed interested in creating a marketing
8    agreement with Robinson Fresh for the watermelons. *Id*. Nelson sent Robinson Fresh's
9    varietal preferences and pricing information so that the harvest schedule could be
10   coordinated with Headstart. *Id*. at ¶ 4; *see also* Dkt. No. 31 at 6. Langum met with
11   Headstart to discuss the varieties and schedule around January 6, 2016. *Id*. at 4, 7; *see also*
12   Dkt. No. 29 at 2, Clerou Decl. at ¶ 3.

13   Langum put Palmeri in touch with Nelson from Robinson Fresh. *See* Dkt. No. 30,
14   Langum Decl. at ¶ 10. Between January and March 2016, Palmeri negotiated a marketing
15   agreement with Robinson Fresh to distribute MEO's watermelons. *See* Dkt. No. 31. They
16   met in person in February 2016. *Id*. at 13. A contract was executed between Robinson
17   Fresh and Jack Palmeri, as MEO's Chief Executive Officer, on April 26, 2016. *See* Dkt.
18   No. 31 at 25.

19   On April 21, 2016, Headstart sent Langum a proposed watermelon schedule
20   including prices and delivery dates which were coordinated with Robinson Fresh. *See* Dkt.
21   No. 26 at 2, Clerou Decl. at ¶ 4. Because Langum via Forty-Four Farms was a former
22   customer of Headstart, "Forty Four Farms" was listed on multiple Headstart documents
23   relating to the MEO farm in Nevada. *See id*. at 2, Clerou Decl. at ¶ 5; *see also* Dkt. No. 30
24   at 6, Langum Decl. ¶ 17. Langum contacted Headstart to correct this error and indicated
25   that the correct billing entity for the order was Mother Earth Organic Farms. *Id*. Headstart
26   requested that Langum complete a standard "Customer Profile Update" and "Terms of Sale
27   Agreement" because Mother Earth Farms was a new customer of Headstart's. *Id*. at ¶ 6;
28   *see also* Dkt. No. 29 at Ex. 2. Langum completed these forms as the Director of

Case No. 18-cv-03285-NC    3

Agriculture of Mother Earth Organic Farms. *Id*. at ¶ 7.

In the spring and summer of 2016, Langum contracted with multiple companies in preparation for the upcoming melon season at the MEO farm. *Id.* at ¶¶ 14–15. He contracted with an electrical company in Nevada, who sent invoices to Mr. Palmeri in Florida. *Id*. He also contracted with an irrigation company in California and presented that bill to Mr. Palmeri, who wrote a check for the irrigation supplies. *Id*. He contracted with a labor company in California for farm labor crews who later planted the watermelon transplants; again, Mr. Langum sent these invoices to Mr. Palmeri. *Id*. at ¶ 20. He also purchased industrial insecticide from a California supplier for the MEO farm. *Id*. at ¶ 21.

Watermelon transplants were shipped from California to the MEO farm in Nevada in May and early June 2016. *See* Dkt. No. 27 at 6; *see also* Clerou Decl. at ¶ 9–10. Palmeri visited the farm for one day around the time that the shipments were received. *See* Dkt. No. 17 at ¶ 13. While there, he photographed the boxes that contained the transplants. *Id*. He did nothing further with the boxes. *Id*. He left the next day. *Id*. He does not know what was planted or what otherwise happened to the transplants. *Id*. Langum states that labor crews worked for one week in early June to plant the watermelon transplants and that Palmeri has been invoiced for these labor services. *See* Dkt. No. 30, Langum Decl. at ¶ 20.

Soon after the transplant delivery, the relationship between MEO and Forty-Four Farms dissolved. *Id*. at ¶ 22. Langum alleges that MEO was delinquent in payment for his services beginning in late March 2016, and that when Palmeri refused to pay him in July 2016, their business relationship ended. *Id*. Palmeri describes that the contractual relationship between MEO and Forty-Four Farms ended "soon after" May 2016 and claims that Forty-Four Farms "abandoned" the farm, such that "operations ceased" and "no watermelons were raised or sold." Dkt. No. 17 at 24, Langum Decl. at ¶ 18.

Headstart sent a customer statement dated May 31, 2016 to Palmeri, invoicing MEO for about $100,000 for the watermelon transplants. *See* Dkt. No. 27 at 7; *see also* Palmeri Decl. at ¶ 16. Palmeri received the invoice sometime after May 31. *Id*. On July 1, 2016, Palmeri emailed Headstart to contest the statement. *Id*. Specifically, his email stated that:

Case No. 18-cv-03285-NC          4

1 (a) the invoice was incorrect, (b) MEO had no account with Headstart, (c) "no third-party vendor has any right to bind us to any Invoice with [Headstart]," and (d) Forty Four Organic Farms c/o Doug Langum was the correct customer to be billed. *See* Dkt. No. 28 at 5. Headstart's Sales Manager Lisa Branco replied that she would void the erroneous account. *See id*. at 2–3. She soon learned from Headstart employee Daniel Clerou that MEO was indeed the correct customer for that shipment. *Id.* She then sent another invoice to MEO on August 31, 2016.[3] *Id*.

### B. Procedural History

Headstart filed this suit on June 1, 2018. *Id*. at 9. Neither defendant in this action has been served with process. *Id.* Defendants moved to dismiss this case for lack of personal jurisdiction, or, in the alternative, to change venue. *See* Dkt. Nos. 16, 17. All parties consented to the jurisdiction of a magistrate judge under 28 U.S.C. §636(c). Dkt. Nos. 14, 22.

## II. PERSONAL JURISDICTION

### A. Legal Standard

Traditional bases for conferring a court with personal jurisdiction include a defendant's consent to jurisdiction, personal service of the defendant within the forum state, or a defendant's citizenship or domicile in the forum state. *J. McIntyre Mach., Ltd. v. Nicastro*, 131 S.Ct. 2780, 2787 (2011). Absent one of these bases, the Due Process Clause requires that the defendant have "certain minimum contacts" with the forum state "such that the maintenance of the suit does not offend traditional notions of fair play and substantial justice." *Int'l Shoe Co. v. State of Wash.*, 326 U.S. 310, 316 (1945) (citations and internal quotation marks omitted).

#### i. Specific Jurisdiction

Personal jurisdiction may be founded on either general jurisdiction or specific

---

[3] This invoice was for transplants provided by Radicle Seed; Headstart did not have sufficient transplants available for the MEO farms order when it was placed and supplemented with some watermelon seedlings from Radicle Seed.

Case No. 18-cv-03285-NC         5

jurisdiction. General jurisdiction exists when a nonresident defendant is domiciled in the forum state or his activities in the forum are "substantial" or "continuous and systematic." *Panavision Int'l L.P. v. Toeppen*, 141 F.3d 1316, 1320 (9th Cir. 1998) (internal quotation marks omitted). A a three-prong test determines whether the court has specific jurisdiction over a party. *Picot v. Weston*, 780 F.3d 1206 (9th Cir. 2015). The prongs are:

> (1) the non-resident defendant must purposefully direct his activities or consummate some transaction with the forum or resident thereof; or perform some act by which he purposefully avails himself of the privilege of conducting activities in the forum, thereby invoking the benefits and protections of its laws;
>
> (2) the claim must be one which arises out of or relates to the defendant's forum-related activities; and
>
> (3) the exercise of jurisdiction must comport with fair play and substantial justice, i.e., it must be reasonable.

*Id.* at 1211. The plaintiff bears the burden of satisfying the first two prongs. *Schwarzenegger v. Fred Martin Motor Co.*, 374 F.3d 797, 801–02 (9th Cir. 2004). The burden then shifts to the defendant to "set forth a compelling case that the exercise of jurisdiction would not be reasonable." *CollegeSource, Inc. v. AcademyOne, Inc.* 653 F.3d 1066, 1076 (9th Cir. 2011).

### ii. Purposeful Availment

The purposeful availment test applies in a contract case like this one.[4] *Boschetto v. Hansing*, 539 F.3d 1011, 1016 (9th Cir. 2008). Executing or performing a contract in a forum state typically indicates that the defendant purposefully availed himself of the privilege of doing business in that state. *Schwarzenegger*, 374 F.3d at 802. When a contract is at issue, the court must "use a highly realistic approach that recognizes that a

---

[4] In a tort case, a "purposeful direction" test set forth in *Calder v. Jones*, 465 U.S. 793 (1984) typically applies instead. *See Brayton Purcell LLP v. Recordon & Recordon*, 606 F.3d 1124, 1128 (9th Cir. 2010); *see also Schwarzenegger*, 374 F.3d at 802. Here, the Court focuses on the purposeful availment test because though tort claims are included in the complaint, the case primarily sounds in contract and the torts at issue arise out of the contract dispute. The plaintiffs' claims are for promissory fraud, breach of contract, restitution/unjust enrichment, conversion, and alter ego/veil piercing.

Case No. 18-cv-03285-NC     6

1   contract is ordinarily but an intermediate step serving to tie up prior business negotiations
2   with future consequences which themselves are the real object of the business transaction."
3   *Burger King v. Rudzewicz*, 471 U.S. 462, 479 (1985).  Therefore, the court must look to
4   the contract's "prior negotiations and contemplated future consequences, along with the
5   terms of the contract and the parties' actual course of dealing" in determining whether to
6   exercise personal jurisdiction over a defendant.  *Id*.

This analysis exists to ensure that "a defendant will not be haled into a jurisdiction solely as a result of random, fortuitous, or attenuated contacts," which would surely offend traditional notions of fair play and substantial justice.  *Id*. at 475; *Int'l Shoe*, 326 U.S. at 316.

### iii.  Motion to Dismiss for Lack of Personal Jurisdiction

On a motion to dismiss for lack of personal jurisdiction under Fed. R. Civ. P. 12(b)(2), a court may consider evidence outside the pleadings.  *Data Disc, Inc. v. Systems Technology Assoc., Inc.*, 557 F.2d 1280, 1285 (9th Cir. 1977).  Allegations of the plaintiff's complaint that are uncontested "must be taken as true, and conflicts between the facts contained in the parties' affidavits must be resolved in [plaintiff's] favor."  *Rio Props., Inc.*, 284 F.3d at 1019.  However, the court "may not assume the truth of allegations in a pleading which are contradicted by affidavit."  *Mavrix Photo, Inc. v. Brand Technologies, Inc.*, 647 F.3d 1218, 1221 (9th Cir. 2011).  Finally, "mere 'bare bones' assertions of minimum contacts with the forum or legal conclusions unsupported by specific factual allegations will not satisfy a plaintiff's pleading burden."  *Swartz v. KPMG LLP*, 476 F.3d 756, 766 (9th Cir. 2007).

### B. Analysis

Here, Headstart proffers three grounds for personal jurisdiction over the defendants: first, consent to personal jurisdiction based on a forum selection clause in the Terms of Sale agreement between Headstart and Langum dated May 5, 2016; second, consent to personal jurisdiction based on another forum selection clause in an invoice from T&C; and finally, based on sufficient purposeful availment of the forum to subject the defendants to

Case No. 18-cv-03285-NC        7

specific personal jurisdiction.[5] The Court finds that the third basis presented – purposeful availment sufficient to create specific jurisdiction – is satisfied, and therefore does not address the other two arguments regarding the defendants' consent to personal jurisdiction via the forum selection clauses.[6]

### i. The Defendants Purposely Availed Themselves of the Forum

The first prong of the specific jurisdiction analysis asks whether the defendant has purposefully availed himself of the privilege of conducting activities in the forum state. *See Picot*, 780 F.3d at 1211 (2015). Executing a contract in the forum state is one activity that may give rise to purposeful availment of that forum. *Schwarzenegger*, 374 F.3d at 802. A single visit to a forum may not be adequate to find purposeful availment. *Glob. Commodities Trading Grp., Inc. v. Beneficio De Arroz Choloma, S.A.* 2017 Dist. LEXIS 131718 (E.D. Cal. Aug. 17, 2017). However, the inquiry is not limited simply to a defendant's physical presence in the forum state but more generally to contacts that proximately result from the defendant's actions. *Burger King Corp.*, 471 U.S. at 74.

First, Palmeri and MEO contracted with Langum at Forty-Four Organic Farms for Langum to manage the MEO farm in Nevada for an ongoing $25,000 per month. *See id.* Langum and Forty-Four are residents of California. *See id.* This contract required regular communication with Langum in California. *See id.* Next, Palmeri communicated both via email and in person with Robinson Fresh representatives to arrange their purchase of the future watermelon harvest. *See id.* These communications contemplated future

---

[5] In its Opposition to the Motion to Dismiss, the plaintiffs also add a fourth theory: general jurisdiction over Mother Earth Organic Farms. *See* Dkt. No. 27 at 14. The Court rejects this theory because Mother Earth is neither incorporated in nor has its principal place of business in California. *See Goodyear Dunlop Tires Operations, S.A. v. Brown,* 564 U.S. 915, 924 (2011). Further, Headstart has failed to show that MEO's activities in California are "substantial" or "continuous and systematic" because Headstart provided inadequate facts regarding factors such as "longevity, continuity, volume, economic impact, physical presence, and integration into the state's regulatory or economic markets." *Mavrix Photo, Inc. v. Brand Techs, Inc.*, 647 F.3d 1218, 1224 (9th Cir. 2011).

[6] Both parties extensively briefed issues of (a) agency theory and (b) the validity of forum selection clauses in their pleadings. These issues are relevant only to the consent bases for jurisdiction, not to the specific jurisdiction analysis, and therefore are not addressed in this Order.

Case No. 18-cv-03285-NC    8

watermelon sales in the state of California. *See id.* The MEO farm operation contracted with multiple California vendors throughout 2016, including an irrigation supply company for whom Palmeri wrote a check for over $100,000 (in response to an invoice listing "Mother Earth Organic Farms" as both the billing and shipping recipient). *See* Dkt. No. 30 at 6, Ex. 11.

It is clear that Palmeri and MEO did business with California vendors in preparing the Nevada farm, intended to later sell their watermelons within California, and contracted with California citizens to manage and provide labor for the farm. Indeed, though the farm was located in Nevada, its related business operations seem to have predominantly taken place in California. Palmeri's contacts with California were anything but "random, fortuitous, or attenuated" – instead, they were purposeful, strategic, and direct. *Burger King Corp.*, 471 U.S. at 475.

The plaintiffs have made a sufficient showing that the defendants purposely availed themselves of the forum of the state of California.

### ii. The Claim Arises Out of Defendants' Forum-Related Activities

The second prong of the specific jurisdiction analysis requires that the claims arise out of the defendant's forum-related activities. *Picot*, 780 F.3d at 1211. The Ninth Circuit frames this prong as a "but-for" test: but for the defendant's activities in the forum state, would this case arise? *Gray & Co. v. Firstenberg Mach. Co.*, 913 F.2d 758, 761 (9th Cir. 1990). The execution or performance of the contract which is the basis of the relevant dispute will typically satisfy this requirement in a contract case. *Schwarzenegger*, 374 F.3d at 802. However, as noted above, the Court must also consider the context of that contract with the understanding that it is but one portion of a broader business transaction. *Burger King Corp.*, 471 U.S. at 475. The "prior business negotiations" and "contemplated future consequences" of the contract must also be taken into account. *Id.*

Here, Defendants contend because neither Palmeri nor MEO signed any contract

Case No. 18-cv-03285-NC         9

1   with the plaintiffs, the second prong is not satisfied in this case.[7]  However, Palmeri – as
2   the CEO of MEO – negotiated and executed at least one contract in California which
3   contemplated future consequences including the contract with Headstart. *See* Dkt. No. 1 at
4   3. Specifically, Palmeri arranged to sell watermelons to Robinson Fresh. *See id*. These
5   watermelon seedlings were to be purchased from Headstart. *See* Nelson Decl. at ¶ 6.

Multiple affidavits support the plaintiffs' claim that the Headstart order was intended by all parties to fulfill the Robinson Fresh contract. The affidavit from Dale Nelson at Headstart states that he coordinated the transplant delivery schedule and preferred watermelon varieties with Headstart, and that doing so was common practice in his role at the fruit marketing company. *Id*. at ¶ 4. The transplant varieties shipped by Headstart match the varieties that Nelson requested. *Id*. at 7; *see also* Dkt. No. 1 at 20 (both listing "Fascination" among other watermelon varieties). Headstart employee Daniel Clerou stated that he "coordinated" the schedule with Robinson Fresh. Dkt. No. 29, Clerou Decl. at ¶ 4. Langum's declaration states that he informed Palmeri about the Headstart transplants and that the two discussed the order before it was placed due to Headstart's inability to source particular varietals requested by Robinson. *See* Dkt. No. 30, Langum Decl. at ¶ 10. Langum states that Palmeri required this information throughout Palmeri's negotiations with Robinson. *Id*.

The only evidence that Palmeri was not involved with the Headstart contract is his own affidavit, which states that he "did not communicate with" the plaintiffs, did not meet with the plaintiffs, and "made no attempt to order transplants from" the plaintiffs. *See* Dkt. No. 14 at 23, Palmeri Decl. at ¶ 9. It is entirely possible that even without his direct communication with or ordering from Headstart, Palmeri was aware of and approved of the transplant order from Headstart for MEO. However, as noted above, insofar as these affidavits conflict, at this stage in the proceedings the Court resolves any such conflicts in the plaintiffs' favor. *Rio Props., Inc.*, 284 F.3d at 1019.

---

[7] This statement sets aside for the moment the issue of whether Langum was MEO's authorized agent.

Case No. 18-cv-03285-NC        10

1       Defendants emphasize that the invoices and shipping labels and other paperwork associated with the Headstart contract included "Forty Four Farms" rather than "Mother Earth Organic Farms," and name Langum rather than Palmeri as a customer. However, the plaintiffs have provided sufficient evidence that this designation was merely a mix-up with Headstart's internal organization based on their prior work with Langum. *See* Clerou Decl. at ¶¶ 5–9. In fact, Langum immediately corrected that error and clarified on multiple occasions with Headstart that the order was for MEO's Nevada farm. *Id*. He completed the required paperwork to set up MEO as a new Headstart customer. *Id*. The internal confusion at Headstart that resulted in a paperwork error is not grounds for defendants to now claim having had no knowledge of or responsibility for the Headstart contract.

      Though Palmeri did not personally execute the contract with Headstart, he did so with Robinson Fresh. The Headstart contract to provide the watermelons that Robinson Fresh would purchase – watermelons which were not sourced by Palmeri elsewhere – was a "contemplated future consequence" of the Robinson Fresh agreement. *Burger King Corp.*, 471 U.S. at 475. Therefore, the claims here arise out of the defendants' contacts with the forum of California. But for Palmeri and MEO's availment of the forum via contracts with vendors including Forty-Four Farms, Robinson Fresh, and the irrigation company, this dispute would not have arisen. The plaintiffs have satisfied the second prong of the specific personal jurisdiction analysis.

### iii. Fair Play and Substantial Justice

      Finally, the Court must consider whether exercising personal jurisdiction over the defendants comports with the notions of fair play and substantial justice. This determination involves evaluating "the burden on the defendant, the forum State's interest in adjudicating the dispute, the plaintiff's interest in obtaining convenient and effective relief, the interstate judicial system's interest in obtaining the most efficient resolution of controversies, and the shared interest of the several States in furthering fundamental substantive social policies." *Burger King Corp.*, 471 U.S. at 477 (internal quotation marks omitted); *see also World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 292 (1980).

These considerations can bolster the reasonableness of an exercise of jurisdiction where the showing of minimum contacts is less strong. *Id.* The court must always weigh the facts of each specific case in determining whether exercising personal jurisdiction comports with fair play and substantial justice. *Id*. at 486. It is the defendants' burden to set forth a "compelling case" that the exercise of jurisdiction would not be reasonable once the plaintiff has met the first two prongs of the specific jurisdiction analysis. *Picot*, 780 F.3d at 1212; *see also Burger King Corp.*, 471 U.S. at 477.

Here, the defendants do little to present a compelling case that exercise of personal jurisdiction by this District would offend notions of fair play and substantial justice. Defendants argue that they did not consent to jurisdiction in this District. *See* Dkt. No. 17 at 21. They point out that MEO and Palmeri are both domiciled in Florida and that the MEO farm was located in Nevada. *Id*. at 6. These facts are insufficient to make a "compelling case" that exercise of jurisdiction in this District is unreasonable. Though the MEO farm was located in Nevada, the events surrounding this dispute primarily took place in California. The Headstart and Robinson Fresh contracts both originated in California, and relevant witnesses from each company are therefore located in California. The contract with Forty-Four Farms is also based in California, where Langum resides. Of the six affidavits submitted in support of these pleadings, all but two – Palmeri's and his attorney's – are from residents of this District. Palmeri admits that the Nevada farm operation has been abandoned entirely. No identified witnesses nor alleged evidence remains in Nevada. No alleged events related to this dispute took place in Florida.

The judicial system's interest in the most efficient resolution of this controversy, and this forum's interest in the adjudicating the dispute, is best reached through this District's exercise of personal jurisdiction. The Court finds that such exercise is reasonable in this case.

**III. VENUE**

**A. Legal Standard**

When a federal court's jurisdiction is based on diversity of citizenship as in this

Case No. 18-cv-03285-NC     12

case, venue is proper in "(1) a judicial district where any defendant resides, if all defendants reside in the same state, (2) a judicial district in which a substantial part of the events or omissions giving rise to the claim occurred, or a substantial part of property that is the subject of the action is situated, or (3) a judicial district in which the defendants are subject to personal jurisdiction at the time the action is commenced, if there is no district in which the action may otherwise be brought." 28 U.S.C. § 1391(a). A district court may transfer venue for the convenience of the parties and witnesses and in the interest of justice. 28 U.S.C. § 1404(a). The purpose of such a transfer is to "prevent the waste of time, energy, and money" and "protect the litigants, witnesses, and the public against unnecessary inconvenience and expense." *Van Dusen v. Barrack*, 376 U.S. 612, 616 (1964).

**B. Analysis**

In the alternative to the motion to dismiss for lack of personal jurisdiction, Defendants request that venue for this action be transferred to the District of Nevada. Venue is proper where a substantial part of the events or omissions giving rise to the claim occurred, or a substantial part of property that is the subject of the action is situated. 28 U.S.C. § 1391(a). A district court may transfer venue under 28 U.S.C. § 1404(a). In doing so, the court considers traditional private and public interest factors as in the earlier doctrine of *forum non conveniens*. *Decker Coal Co. v. Commonwealth Edison Co.*, 805 F.2d 834, 843 (9th Cir. 1986) (citing *Piper Aircraft Co. v. Reyno*, 454 U.S. 235, 241 (1981)). These factors can include the availability of evidence and witnesses, the practical costs of trial, a court's familiarity with the law, and the local interest in having localized controversies decided at home. *Id*. at 843. The location of counsel is a factor typically given little weight. *See Kawamoto v. CB Richard Ellis, Inc.*, 225 F. Supp. 2d 1209, 1215 (D. Haw. 2002). The plaintiff's initial choice of forum usually receives some weight, and is given "substantial deference if the plaintiff is a resident of the district in which the action is brought." *Id*. at 1216; *see also Miracle Blade, LLC. V. Ebrands Commerce Group, LLC.*, 207 F. Supp. 2d 1136, 1155 (D. Nev. 2002).

Case No. 18-cv-03285-NC 13

Here, Defendants fail to show that transferring venue is warranted for the convenience of the parties and in the interest of justice under 28 U.S.C. § 1404(a). As discussed above, a substantial part of the events giving rise to this claim occurred in California. Though the piece of property at issue is located in Nevada, the farm has been abandoned. Furthermore, the property itself is less at the heart of this case than the contract with Headstart in California. Witnesses seem to be predominantly located in California and, to a lesser extent, Florida; nevertheless, none seem to be located in the District of Nevada, the defendants' requested forum. Defendants argue that litigating in this District "would require Mother Earth to spend more than the amount T&C claims merely for extra litigation costs incurred by its Nevada counsel in travel time and expenses." Dkt. No. 17 at 17. However, convenience of counsel is given less weight than convenience of witnesses, evidence, and parties. *See Kawamoto*, 225 F. Supp. 2d at 1215. Because the plaintiffs reside in this District, their initial venue choice is given additional weight. *See id.* at 1216.

The Court acknowledges that litigating in this District is inconvenient for the Florida defendants and their Nevada counsel. However, on balance, it finds that due to the other factors weighing in favor of venue in this District, venue is proper here.

## IV. CONCLUSION

The Court finds that it has personal jurisdiction over both defendants and that venue is proper in the Northern District of California. Therefore, both the Motion to Dismiss for Lack of Personal Jurisdiction and the Motion to Transfer Venue are DENIED.

**IT IS SO ORDERED.**

Dated: October 12, 2018

_____
NATHANAEL M. COUSINS
United States Magistrate Judge

Case No. 18-cv-03285-NC        14